Dennis GONZALEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–09–00844–CR, 01–09–00845–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 17, 2011.

Jonathan L. Munier, Houston, for Appellant.

Patricia R. Lykos, Harris County Dist. Atty., Eric Kugler, Asst. Dist. Atty. of Harris County, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Dennis Gonzalez, appeals a judgment finding him guilty of sexual assault for penetrating the complainant's sexual organ and aggravated sexual assault for penetrating the complainant's anus. *See* TEX. PENAL CODE ANN. §§ 22.011(a)(1)(A), 22.021(a)(1)(A)(i) (West 2007). In five issues, appellant contends that the evidence establishing aggravated sexual assault is legally and factually insufficient; that the indictment concerning penetration of the complainant's sexual organ is materially defective; that his conviction for sexual assault of the complainant's sexual organ was a lesser-included offense of his conviction for aggravated sexual assault of the complainant's anus and precluded by double jeopardy; that the State employed improper jury arguments; and that the trial court erred by admitting testimony from a witness not listed in the State's notice of intent to introduce extraneous offenses. We conclude that the evidence is sufficient, that the indictment is not materially defective, that appellant's conviction for sexual assault is not precluded by double jeopardy, that the State's jury arguments were proper, and that appellant has failed to show any harm from the omission of the witness from the State's notice of intent to introduce extraneous offenses. We affirm.

## Background

One afternoon in September 2007, the complainant went to visit her boyfriend at a hotel room. At around 1:00 a.m. on the following morning, the complainant and her boyfriend argued. Upset, the complainant left the hotel and began walking down the street. A gray car approached and stopped next to her. Appellant, the driver, asked her if she needed a ride. She said yes and entered the car, sitting in the front passenger seat. She began directing appellant to her home, but he drove into a neighborhood and parked on the side of the street. Appellant told her, "I know you're a prostitute." The complainant denied that she was a prostitute. Appellant grabbed her hand tightly. He instructed her to remove her clothes and threatened to hurt and kill her if she did "anything funny." Too scared to fight back, she complied. Appellant took her clothes, cell phone, and money.

Appellant pulled his pants down and forced her to perform oral sex on him. After a while, he then instructed her to recline the passenger seat. Appellant positioned himself on top of her and penetrated her sexual organ with his sexual organ. Crying, the complainant begged him to stop, but appellant told her to shut up.

A while later, appellant instructed her to turn over onto her stomach, facing down. Appellant then penetrated her anus with his sexual organ. The complainant was immediately in pain. Placing his hand around her neck in a chokehold, appellant told her, "I'll hurt you." For a short time, the complainant was unable to breathe. After ejaculating in her anus, appellant

ordered her to take her clothes and exit the car. The complainant never consented to any type of sexual contact with appellant.

In only her shorts, socks, and bra, the complainant ran down the street. Seeing a house with its lights on, she began knocking on the door, saying, "Help." The complainant told the man who answered the door what had happened. The man loaned her a shirt and called the police. An officer arrived around 6:06 a.m. The complainant told the officer that she had been forced into a car and the driver had penetrated her sexual organ with his sexual organ. She stated that she did not want to be examined and did not want to file a police report. Nevertheless, the officer called an ambulance.

The ambulance took the complainant to the hospital. There, a nurse performed a sexual assault examination. The complainant told the nurse that the driver had exited the car and forced her to enter. The complainant also told her that the driver had sex with her "in the front and back." The nurse noted two bruises on the complainant right forearm. Using cotton swabs, the nurse collected specimens from the complainant's sexual organ and anus. Testing revealed the presence of sperm in both specimens. In the sexual-organ specimen, further DNA analysis identified sperm from at least two sources, of which appellant was possibly, but not definitively, one. In the anal specimen, DNA analysis identified sperm from only one source, which was from appellant.

Two indictments for aggravated sexual assault each alleged that on or about September 13, 2007, by the use of physical force and violence, appellant compelled the complainant to submit and participate, and by his acts and words, appellant placed the complainant in fear that serious bodily injury would be imminently inflicted on her.

One of these indictments alleged that appellant intentionally or knowingly caused the penetration of the complainant's sexual organ with his sexual organ. The second indictment asserted that appellant intentionally or knowingly caused the penetration of the complainant's anus with his sexual organ without her consent. Prior to voir dire, appellant's trial counsel objected on the ground that the "two indictments allege the same offense against the same victim, the same day." The trial court overruled the objection. Before the jury, appellant was arraigned on these charges, to which he pleaded "not guilty."

During cross-examination of the complainant, appellant's trial counsel asked the complainant if she had ever been convicted for prostitution. The complainant responded, "No." Asking again, counsel elicited the complainant's admission that she was convicted for prostitution in June 2009, which was almost two years after these offenses occurred.

Appellant's trial counsel made no objection to the charges. For both jury charges, the jury was instructed that if it was not convinced that the act constituted aggravated sexual assault, it could convict for the lesser-included offense of sexual assault. On the charge of aggravated sexual assault of the complainant's sexual organ, the jury returned a verdict of guilty for the lesser-included offense of sexual assault. On the charge of aggravated sexual assault of the complainant's anus, the jury returned a verdict of guilty.

Immediately preceding the punishment phase, appellant objected to the State offering a witness whom it did not listed in its notice of intent to introduce extraneous offenses. The State's notice identified two sexual assaults committed by appellant against Cambio and Castillo, each of whom testified during the punishment phase. The notice failed to list the aggravated

sexual assault committed against Ortiz. However, one month prior to trial, the State filed a notice of intent to introduce business records. Among those records is the jail card for appellant's arrest for the aggravated sexual assault charge against him involving Ortiz, pending in the same district court. Finding that appellant had received actual notice from the State about the assault against Ortiz, the trial court overruled appellant's objection.

In the sentencing phase, Ortiz testified that in April 2006, she was walking down the street at around 6:30 a.m. when a silver car approached and stopped next to her. Appellant, the driver, asked her if she needed a ride. Ortiz said yes and entered the car, sitting in the front passenger seat. She began directing appellant to her destination, but he drove the opposite way. While he was still driving, appellant reached over with his right arm, placing the witness in a headlock. Appellant then parked in front of an elementary school. He instructed her to remove her pants. Appellant threatened that he would hurt her if she did not perform oral sex on him. She complied. After a few minutes of oral sex, appellant threatened to hurt her if she did "anything stupid." Appellant told the witness she had a choice to be raped "in the front or the back." In preparation for the next stage of the sexual assault, appellant began adjusting the center console when the witness saw an opportunity to escape. She unlocked the door and stepped out of the car, but appellant followed. Grabbing her hair, appellant began punching and dragging the witness. Appellant then reentered his car and drove away quickly, almost running over the witness.

Appellant's trial counsel cross-examined Ortiz concerning statements she made during an earlier presentation of a police photo array. Counsel also cross-examined Ortiz on the details of appellant's car and the composite sketch.

Appellant stipulated to having a prior conviction for prostitution in 2000 and for possession of a controlled substance in 2006. The jury assessed appellant's sentence on the sexual assault at 20 years' imprisonment and on the aggravated sexual assault at life imprisonment.

### Sufficiency of the Evidence

■ In his second issue, appellant contends that his conviction for aggravated sexual assault is legally and factually insufficient because the jury's sexual-assault conviction in one of the charges implies that he did not commit the aggravating conduct during the criminal transaction. He also suggests that the complainant lacked credibility.

### A. Standard of Review

■ An appellate court reviews legal and factual sufficiency challenges using the same standard of review. *Green v. State,* No. PD–1685–10, 2011 WL 303818, at *1 (Tex.Crim.App. Jan. 26, 2011) (not designated for publication); *Ervin v. State,* 331 S.W.3d 49, 52–56 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State,* 323 S.W.3d 893, 912, 926 (Tex.Crim.App.2010)). Under this standard, evidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *Brooks,* 323 S.W.3d at 899 (plurality op.); *Laster v. State,* 275 S.W.3d 512, 517 (Tex.Crim.App. 2009); *Williams v. State,* 235 S.W.3d 742,

750 (Tex.Crim.App.2007). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11; *Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750. The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim. App.1997). If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

 An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim.App.2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton*, 235 S.W.3d at 778. An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *Williams*, 235 S.W.3d at 750. In viewing the record, direct and circumstantial evidence are treated equally: circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13).

**B. Applicable Law**

A person commits sexual assault if he intentionally or knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent...." TEX. PENAL CODE ANN. § 22.011(a)(1)(A). A sexual assault is "without consent" if "the actor compels the other person to submit or participate by the use of physical force or violence." *Id.* § 22.011(b)(1). A person commits aggravated sexual assault if he additionally "by acts or words places the victim in fear that ... serious bodily injury ... will be imminently inflicted on any person...." *Id.* § 22.021(a)(1)(A)(i), (2)(A)(ii).

**C. Analysis**

Appellant sexually assaulted the complainant in three different ways: First, he required her to perform oral sex on him. Second, he penetrated her sexual organ. Third, he penetrated her anus. By finding appellant guilty of the lesser-included offense of sexual assault of the second assault, the jury implicitly determined that when he penetrated the complainant's sexual organ, he did not by acts or words place the complainant in fear that serious bodily injury would be imminently inflicted on her. *See Stephens v. State*, 806 S.W.2d 812, 833–34 (Tex.Crim.App.1990) ("[A] verdict finding the defendant guilty of a lesser included offense is treated as an implied acquittal of the greater offense where such a verdict is accepted by the trial court and both the greater offense and the lesser included had been submitted to the trier of

fact during the trial."). During the time when the first and second assaults occurred, appellant grabbed her hand tightly, threatened to hurt and kill her, causing her to submit to him because she feared him.

During the time when the third sexual assault occurred, while penetrating the complainant's anus, appellant placed his hand around her neck in a chokehold, causing her to be unable to breath. Viewed in the light most favorable to the verdict, we conclude that the complainant's testimony shows that by his act of putting the complainant in a chokehold that caused her to stop breathing, appellant placed the complainant in fear that serious bodily injury would be imminently inflicted on her. We hold that the jury could have rationally found beyond a reasonable doubt that appellant committed aggravated sexual assault based on the penetration of the complainant's anus. *See Collins v. State,* 2 S.W.3d 432, 438 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (evidence legally sufficient to show that defendant placed complainant in fear that serious bodily injury would imminently result where he placed her in chokehold). Because appellant's physical attack of the complainant varied in intensity from the first two sexual assaults to the third sexual assault, the jury was not irrational in finding that only the third penetration, when appellant choked the complainant, constituted aggravated sexual assault.

Appellant also contends that the complainant's credibility can be discounted because of inconsistencies between her trial testimony and what she told the police and sexual-assault-examination nurse, as well as her initial failure to admit her prior conviction. The jury heard the complainant's testimony, and we defer to the factfinder's evaluation of credibility. *See Williams,* 235 S.W.3d at 750. We hold the

evidence is sufficient to establish aggravated sexual assault of the complainant's anus.

We overrule appellant's second issue.

### Variance

■ In his third issue, appellant contends that there was a material variance between the proof at trial and the indictment for aggravated sexual assault alleging the penetration of the complainant's sexual organ because the indictment fails to include the words "without consent." At the outset, we note that appellant was not convicted of the aggravated sexual assault alleged in that indictment but was instead convicted of the lesser-included offense of sexual assault.

■ "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar v. State,* 46 S.W.3d 243, 246 (Tex.Crim.App.2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* An immaterial variance may be disregarded. *Id.* at 250. A variance is material only if it prejudices a defendant's substantial rights. *Id.* at 247–48. A variance prejudices a defendant's substantial rights if (1) the indictment, as written, fails to inform the defendant of the crime charged so as to allow him to prepare an adequate defense at trial or (2) the indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* at 248.

Appellant accurately points out that the indictment based on the penetration of the complainant's sexual organ fails to include the words "without consent," which is an essential element of both sexual assault and aggravated sexual assault. *See* TEX.

PENAL CODE ANN. §§ 22.011(a)(1)(A), 22.021(a)(1)(A)(i). The indictment, however, includes one of the statutory definitions for "without consent" by alleging that appellant compelled the complainant to submit or participate by the use of physical force or violence. *See id.* § 22.011(b)(1). We conclude that there is no variance between the indictment and the evidence, which showed appellant used physical force to grab the complainant's hand tightly while threatening to kill her if she did not submit to him. *See Gollihar,* 46 S.W.3d at 247–49 (applying a materiality requirement, a variance between the indictment and proof did not surprise or prejudice defendant's rights).

We overrule appellant's third issue.

### Double Jeopardy

■ In his first issue, appellant contends that he is being unconstitutionally punished multiple times for the same offense. Specifically, appellant contends that the act of penetrating the complainant's sexual organ and the act of penetrating the complainant's anus constitute a single offense because both acts occurred as part of a single, continuous, and uninterrupted criminal transaction and both acts are proscribed by the same statutory subsection in the Penal Code. He asserts that there is no clear indication that the Texas Legislature intended multiple punishments in this situation.

■ The Double Jeopardy Clause protects an accused "from being punished

more than once for the same offense in a single prosecution." *Gonzales v. State,* 304 S.W.3d 838, 845 (Tex.Crim.App.2010). While noting that the *Blockburger* rule [1] is the "traditional indicium of legislative intent[,]" the court stated that the rule "is only a tool of statutory construction—and not even an exclusive one." *Id.* In addition to the *Blockburger* test, the Court of Criminal Appeals indicated other considerations relevant to determining legislative intent:

> whether the offenses['] provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, ... and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Id.* (citing *Ex parte Ervin,* 991 S.W.2d 804, 814 (Tex.Crim.App.1999); *see also Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) ("Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecu-

---

1. Under the *Blockburger* rule, an act or transaction that violates two distinct statutory provisions will be construed as two separate offenses if each provision requires proof of a fact that the other does not. *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Whalen* Court explained: "The assumption underlying the

[*Blockburger*] rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen,* 445 U.S. at 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980).

tor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.").

Using these factors, the *Gonzales* court analyzed whether the Legislature intended the statutory subsection proscribing intentionally or knowingly "caus[ing] the penetration of the anus or sexual organ of a child by any means" to create two separate offenses. TEX. PENAL CODE ANN. §§ 22.011(a)(2)(A), 22.021(a)(1)(B)(i); *Gonzales*, 304 S.W.3d at 846. Except that the statutory provision at issue here concerns an unconsenting adult rather than a child, the key statutory language analyzed in *Gonzales*, namely, "the penetration of the anus or sexual organ," is identical. *Compare* TEX. PENAL CODE ANN. §§ 22.011(a)(1)(A), 22.021(a)(1)(A)(i) *with id.* §§ 22.011(a)(2)(A), 22.021(a)(1)(B)(i). Like appellant, Gonzales had been twice convicted of sexual assault based on a single criminal transaction for penetrating a child's sexual organ and also for penetrating the child's anus. *Gonzales*, 304 S.W.3d at 845. In interpreting the key statutory language, the court noted that the subsection proscribes two acts using separate and disjunctive phrases. *Id.* at 849. The court explained:

> [S]uch specificity in a conduct-oriented statute ordinarily reflects a legislative intent that each discretely defined act should constitute a discrete offense. Penetration of the anus constitutes a discrete act from penetration of the sexual organ, even if they occur within a short period of time. That both the anus and sexual organ may be anatomically located in the "genital area" does not render the separate acts of penetration the "same" offense for double-jeopardy purposes.

*Id.* The court held that a conviction for sexual assault for penetrating a child's sexual organ and another for penetrating a child's anus does not violate the Double Jeopardy Clause. *Id.* Because with respect to the analogous statutory subsection describing conduct involving children, the Court of Criminal Appeals has determined that the phrase "penetration of the anus or sexual organ" contemplates separate convictions for penetration of the sexual organ and of the anus even in a single criminal transaction, we conclude that the court's analysis compels the same conclusion in the statute pertaining to sexual assaults of adults. *See id.*

Surmising that the Court of Criminal Appeals must have decided *Gonzales* on the Texas Double Jeopardy Clause, appellant suggests we are not bound by the Court of Criminal Appeals' decision in *Gonzales* with respect to his federal constitutional challenge. *Gonzales*, however, was decided under the federal constitution. *Id.* at 845. Furthermore, appellant presents no argument or authority why the Texas Constitution would compel a result different from the federal Constitution. Following *Gonzales*, we hold the dual convictions in this case are not barred by double jeopardy. *See id.* at 849.

We overrule appellant's first issue.

### Improper Closing Arguments

In his fourth issue, appellant challenges two comments made by the State during its closing arguments. Appellant further contends that the trial court failed to cure the State's improper jury arguments with a limiting instruction.

### A. Applicable Law

 The approved areas of jury argument are (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000); *Andrade v.*

*State*, 246 S.W.3d 217, 229–30 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd). A prosecutor may argue his opinion concerning a witness's credibility or the truth of witness's testimony only if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony. *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Crim.App.1985); *Graves v. State*, 176 S.W.3d 422, 431 (Tex.App.-Houston [1st Dist.] 2004, pet. struck). Wide latitude is allowed without limitation in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App.1988). In examining challenges to a jury argument, a court considers the remark in the context in which it appears. *Id.*

An argument exceeding the permissible bounds of these approved areas constitutes reversible error only if an analysis of the record as a whole shows the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook*, 29 S.W.3d at 115; *see also Hawkins v. State*, 135 S.W.3d 72, 79 (Tex.Crim.App.2004). In assessing the harm of an improper argument, an appellate court looks to three factors: "(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim.App.1998).

A party may present on appeal a complaint that a jury argument was improper only if the record shows that (1) he timely and properly objected to trial court and (2) the trial court (a) overruled the objection, either expressly or implicitly, or (b) refused to rule on the objection, and the party objected to the refusal. Tex.R.App. P. 33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 510–11 (Tex.Crim.App.2001); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996). A trial court implicitly rules on a matter if "its actions or other statements otherwise unquestionably indicate a ruling." *Gutierrez*, 36 S.W.3d at 511 n. 1 (Tex.Crim.App.2001).

## B. Analysis

During his closing argument, appellant's trial counsel explained to the jury that prostitution is a crime of moral turpitude and that a person convicted for a crime of moral turpitude "has a little trouble telling the truth." Counsel pointed out that the complainant lied under oath when initially asked if she had been convicted for prostitution. Counsel also emphasized the inconsistency between the complainant's testimony that she voluntarily entered appellant's car and prior inconsistent statements made to the responding police officer and sexual-assault-examination nurse. Counsel then explained that in order for the jury to convict appellant, it would have to believe the complainant's testimony "100 percent."

In its closing argument, the State explained that it was not asking the jury to believe everything to which the complainant had testified. Concerning the complainant's June 2009 conviction for prostitution, the State argued:

> It would be ridiculous if I asked to [sic] you believe everything [the complainant said]. But what you need to think about is why can you believe her as to the event of September 13th 2007?

> I don't know if she was prostitute on [the] date [that appellant sexually assaulted her]. I don't know if it was

something based on the traumatic, horrific experience that [appellant] put her through, which led to the violation of her body which led to the I don't care anymore, it's over, which led her to prostitution two years later. . I don't know.

Appellant objected on the ground that this argument was speculation. The trial court, without expressly sustaining or overruling the objection, stated to the jury, "Ladies and gentlemen, you are the triers of fact. You are the judges. And . . . you have heard the evidence and you will make your own decision."

The State then explained that there was no evidence that the complainant was a prostitute on the date that appellant sexually assaulted her. The State posed the rhetorical question of why, assuming she was a prostitute at the time of the assault, would she lie to the police, the sexual-assault-examination nurse, the investigator, and the jury when doing so could jeopardize her ability to make money prostituting. Pointing out that the complainant had cried during her testimony, the State rebuffed its own question: "No, ladies and gentlemen, what she told you on that stand was the truth. When she told you that she was violated by that man, by [appellant] in his car on September 13th, 2007, that was the truth." Appellant objected on the ground that the State had interjected its own opinion into its closing argument. The trial court again explained to the jury, "Ladies and gentlemen, you are the triers of fact. You are able to make deductions from the facts that have been given to you." Appellant's trial counsel asked what the court's ruling on the objection had been. The trial court clarified that it had overruled the objection.

◼ In this appeal, appellant first challenges the State's comment that it did not know if the prostitution was the result of this sexual assault. The trial court, how-

ever, did not rule on this objection. The court stated, "Ladies and gentlemen, you are the triers of fact. You are the judges. And . . . you have heard the evidence and you will make your own decision." We hold that appellant waived any error by failing to obtain a ruling on his objection. See TEX.R.APP. P. 33.1(a); *Gutierrez*, 36 S.W.3d at 511; *Cockrell*, 933 S.W.2d at 89; *Grayson v. State*, 192 S.W.3d 790, 793 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (trial court's response "Let's proceed" did not constitute implied overruling of objection).

◼ Appellant's second challenge to the State's argument concerns the following statement:

> Not only on [the night of the sexual assault], but she's going to come in here [to court] and she's such a great actress, she's going to sit up there and cry when she tells you these horrendous details[?]

> No, ladies and gentlemen, what she told you on that stand was the truth. When she told you that she was violated by that man, by [appellant] in his car on September 13th, 2007, that was the truth.

On appeal, appellant contends that this argument improperly comments on the weight of the evidence and introduces unsworn testimony regarding the complainant's credibility.

As it explained to the jury, the State based its opinion that the complainant testified truthfully on reasonable deductions from corroborating evidence, including the complainant's demeanor while testifying. See *Good v. State*, 723 S.W.2d 734, 736–37 (Tex.Crim.App.1986) (prosecutor's argument that witness was honest was reasonable deduction from witness's testimonial demeanor, which is considered to be in evidence). The State explained that the occurrence of the assaults was corroborat-

ed by the responding police officer's testimony and the sexual-assault-examination nurse's medical record, which both maintained that the complainant was emotionally distraught on the morning of the assaults. *See Vasek v. State*, 163 Tex.Crim. 632, 294 S.W.2d 810, 811 (1956) (counsel drew impression that witness was honest based on answers of other witnesses). We hold that the State's comment relating to the complainant's credibility is a proper jury argument based on a reasonable deduction from the evidence. *See McKay*, 707 S.W.2d at 37.

We overrule appellant's fourth issue.

### Admission of Evidence During Punishment Phase

In his fifth issue, appellant contends that the trial court erred by admitting testimony from Ortiz because that sexual assault was not listed in the State's notice of intent to introduce extraneous offenses.

#### A. Applicable Law

During the punishment phase, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing...." TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2010). "On timely request of the defendant [to the attorney representing the State], notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(g). Rule 404(b) requires that "reasonable notice [be] given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." TEX.R. EVID. 404(b); *Worthy v. State*, 312 S.W.3d 34, 37 (Tex.Crim.App.2010). The Court of Criminal Appeals has explained that the purpose of notice requirement provided in Texas Rule of Evidence 404(b) is to prevent sur-

prise. *Hayden v. State*, 66 S.W.3d 269, 272 (Tex.Crim.App.2001).

■■■ "The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional error." *Ruiz v. State*, 293 S.W.3d 685, 695 (Tex.App.-San Antonio 2009, pet. ref'd); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex.App.-Austin 2002, no pet.). An appellate court may reverse a judgment of conviction or punishment based on a non-constitutional error only if that error affected the defendant's substantial rights. TEX.R.APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). "[W]hen substantively admissible Rule 404(b) evidence is improperly admitted because of the State's failure to comply with the Rule 404(b) notice provision[,] ... the error ... may have had a substantial effect or influence on the jury's verdict, but it cannot be said that this effect or influence was 'injurious' if the defendant was not surprised by the evidence." *Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim.App.2005). We find the Court of Criminal Appeals' reasoning applicable here because Rule 404(b) is incorporated by reference into the provisions of the Code of Criminal Procedure relevant here. *See Sharp v. State*, 210 S.W.3d 835, 839–40 (Tex.App.-Amarillo 2006, no pet.) (applying harm standard articulated in *Hernandez* to analyze harm under TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(g)).

#### B. Analysis

■■■ It is undisputed that appellant never requested notice of the State's intent

to offer evidence of extraneous offenses to be used at the punishment phase. Article 37.07 requires the State give notice only "[o]n timely request of the defendant[.]" TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(g). Under the plain terms of the Code, the State's failure to give notice about Ortiz is not error. *See id.* However, two intermediate courts of appeals have determined that when "the State voluntarily furnishes notice of extraneous acts absent any request by the defendant, it is bound by the 'four corners' of the notice." *Ruiz,* 293 S.W.3d at 694–95 (citing *Blackmon v. State,* 80 S.W.3d 103, 108 (Tex.App.-Texarkana 2002, pet. ref'd)). Assuming that the State was bound to the notice given, we hold any error was harmless because appellant has not shown unfair surprise by the evidence.

Appellant does not contend, here or at trial, that Ortiz's testimony caused him surprise; that the omission from the State's notice prevented him from preparing a defense; or that had he known the State intended to offer her testimony, his defense would have differed. *See Hernandez,* 176 S.W.3d at 825; *Sharp,* 210 S.W.3d at 839–40 (finding any error in admitting evidence of extraneous offense during punishment phase harmless despite failure to provide notice because appellant did not contend that witness's testimony caused him surprise, that omission from notice prevented him from preparing a defense, or that had he known, his defense would have differed). The record shows that the sexual assault of Ortiz was a charge pending in the same court as these charges and the trial court determined appellant had actual notice about Ortiz's claims. We hold that appellant has failed to show that any error in the admission of Ortiz's testimony affected his substantial rights. *See Hernandez,* 176 S.W.3d at 825.

We overrule appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court.