Opinion issued
December 1, 2011.



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NOS. 01-10-01047-CR 

         
01-10-01048-CR

———————————

Terance Deshay Cannady, Appellant

V.

The
State of Texas, Appellee



 



 

On Appeal from the 185th District
Court

Harris County, Texas



Trial Court Case No. 1270556, 1270557

 



 

 

MEMORANDUM
OPINION

 

          Terrance
Deshay Cannady appeals convictions for the state jail felonies of possession of
less than one gram of cocaine and delivery of less than one gram of cocaine.[1]  Tex. Health & Safety Code Ann. §§ 481.112(a), (b) (delivery), 481.115(a),
(b) (possession) (West 2010).  Cannady
was charged by indictment with the two offenses and pleaded not guilty.  After finding him guilty, the jury assessed
punishment at two years’ confinement for the possession charge and four years’
confinement for the delivery charge.  On
appeal, Cannady contends that the evidence is insufficient to show that the substance
confirmed to be cocaine by the Houston Police Department, and admitted into
evidence at trial, is the same substance gathered by officers during the
undercover investigation and arrest that led to these charges.  Finding some evidence from which a rational
jury could determine that the evidence tested and admitted at trial was the
evidence taken from Cannady on the day of his arrest, we affirm. 

Background

          Officer Craig with the Houston
Police Department Narcotics Division was conducting an undercover buy as part
of an investigation.  Craig approached
Michael Spitzer and informed Spitzer that he was looking for a “40-pack,” which
is slang for $40 worth of crack cocaine. 
After Spitzer made a phone call, Craig handed him two
$20 bills.  Spitzer walked into a nearby parking lot, out
of Craig’s sight.

          Officer Briggs, a surveillance officer
who was part of Craig’s team that night, observed Spitzer take the money from
Craig.  Spitzer made a phone call and a
car drove up to him.  Spitzer handed
money to Cannady, the car’s sole occupant, who handed something back to
Spitzer.  Spitzer returned to Craig and
handed him a rock.  Craig’s field-testing
later indicated the rock was cocaine. 
Craig put the rock in a bag and labeled it “Item No. 1.”    

          Two uniformed officers, Aldrete and
Hernandez, stopped Cannady’s car shortly thereafter.  The officers arrested Cannady and searched
him incident to that arrest.  Aldrete
found what appeared to be four rocks of crack cocaine in Cannady’s sock.  Hernandez found two $20 bills in Cannady’s pocket,
and the serial numbers on them matched the serial numbers of the two bills that
Craig had used for the buy.  One of the
officers placed the suspected cocaine taken from Cannady’s sock on the trunk of
Cannady’s car.  Briggs approached as
Hernandez and Aldrete were searching Cannady and took possession of the
suspected cocaine.  He placed it in a
bag, which Hernandez initialed.    

Briggs later turned the bag over to Sergeant Gracia,
who in turn gave the suspected cocaine to Craig for field testing.  The field test indicated that the substance
was cocaine.  Craig bagged this evidence
and labeled it “Item No. 2.”  Later that
night, Craig logged both pieces of evidence into the Narcotics Division.  

At trial, Craig identified State’s Exhibit 3 as the item
Spitzer gave him and State’s Exhibit 6 as the items Sergeant Gracia gave him.  Craig further testified that, on the day of
the trial, he picked the items up from the Narcotics Division to transport to
court for use in the trial.

          Ahtavea Barker, a chemist from the HPD
Crime Laboratory, testified that she tested State’s Exhibits 3 and 6.  State’s Exhibit 3 consisted of 0.4 grams of
cocaine.  State’s Exhibit 6 consisted of
0.8 grams of cocaine.

Sufficiency of the Evidence 

          In
his sole issue, Cannady contends that the evidence is insufficient to show an
unbroken chain of custody demonstrating that the substance confirmed by the Crime
Laboratory to be cocaine and admitted in evidence as State’s Exhibits 3 and 6 are
the same substances taken from Cannady on the day of his arrest.  Specifically, Cannady contends that Craig did
not testify at trial that he initialed or marked with an HPD incident number
the suspected cocaine before logging it into the Narcotics Division for
safekeeping.  Cannady also points out
that Barker did not testify that the items she received and tested were marked
with an incident number or officer’s initials. 
According to Cannady, without express testimony from these witnesses
confirming that such identifying marks were placed on and remained on the items
at all times, there is insufficient evidence that the items tested by Barker
and introduced as State’s Exhibits 3 and 6 were the items recovered during the
undercover buy and Cannady’s arrest.

A.      Standard of Review

          Evidence is
insufficient to support a conviction if considering all record evidence in the
light most favorable to the verdict, a factfinder could not have rationally
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  Gonzalez v. State, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st
Dist.] 2011, pet. ref’d); see Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); In re Winship, 397 U.S. 358, 361, 90 S.
Ct. 1068, 1071 (1970); Brooks, 323
S.W.3d at 899 (plurality op.); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009);
Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007). 
Evidence is insufficient under this standard in four circumstances:  (1) the record contains no evidence probative
of an element of the offense; (2) the record contains a mere “modicum” of
evidence probative of an element of the offense; (3) the evidence conclusively
establishes a reasonable doubt; and (4) the acts alleged do not constitute the
criminal offense charged.  Gonzalez, 337 S.W.3d at 479; see Jackson, 443 U.S. at 314, 318 n.11,
320, 99 S. Ct. at 2786, 2789 & n.11; Laster, 275 S.W.3d at 518; Williams,
235 S.W.3d at 750.   If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal.  Gonzalez, 337 S.W.3d at 479; see
Tibbs v. Florida, 457 U.S.
31, 41, 102 S. Ct. 2211, 2218 (1982).

          An appellate court
determines whether the necessary inferences are reasonable based upon the
combined and cumulative force of all the evidence viewed in the light most
favorable to the verdict.  Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting Hooper v. State, 214 S.W.3d 9, 16–17
(Tex. Crim. App. 2007)).  When the record
supports conflicting inferences, an
appellate court presumes that the factfinder resolved the conflicts in favor of
the verdict and defers to that resolution. 
Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  An appellate court likewise defers to the
factfinder’s evaluation of the credibility of the evidence and the weight to
give the evidence.  Williams, 235
S.W.3d at 750.  

B.      Application

          Cannady argues that the State failed
to present evidence of an unbroken chain of custody demonstrating that the
cocaine tested by Barker and admitted in evidence as State’s Exhibits 3 and 6 was
the same substance recovered during the undercover buy and his arrest.  “Absent evidence of tampering, issues
regarding the chain of custody bear on the weight, rather than on the
admissibility, of evidence.” Davis v. State, 313 S.W.3d 317, 348 (Tex.
Crim. App. 2010), cert. denied,
No. 10-9078, 2011 WL 4530488 (U.S. Oct. 3, 2011).  To support the admission of evidence, the
State must prove the beginning and the end of the chain of custody; the State
need not “provide a moment-by-moment account of the whereabouts of evidence from
the instant it is seized until it is introduced at trial.”  Reed v.
State, 158 S.W.3d 44, 52 (Tex. App.—Houston [14th Dist.] 2005, no
pet.).  A chain of custody is conclusively
established if an officer testifies that he seized an item of physical evidence,
put an identification mark on it, placed it in the property room, and retrieved
the item being offered into evidence at trial. 
Stoker v. State, 788 S.W.2d 1,
10 (Tex. Crim. App. 1989), cert. denied,
498 U.S. 951, 111 S. Ct. 371 (1990).  Because
Cannady does not contend that tampering occurred in this case or that evidence
regarding the cocaine should not have been admitted, we review the evidence in
the light most favorable to the jury’s verdict to determine whether a jury
rationally could have found beyond a reasonable doubt that State’s Exhibits 3 and
6 were the substances that Cannady delivered and possessed, respectively, on
the day of his arrest.  See Davis,
313 S.W.3d at 348 (stating that, absent evidence of tampering, issues regarding
the chain of custody go to weight and not admissibility of evidence). 

          Concerning
State’s Exhibit 3, the substance delivered to Craig through Spitzer, Craig
testified he gave $40 to Spitzer for crack cocaine.  Briggs witnessed Spitzer engage in a
hand-to-hand transaction with Cannady. 
Spitzer walked back to Craig and handed him a rock of what appeared to
Craig to be crack cocaine.  Craig
testified that he placed this evidence into a bag, marked it “Item No. 1”, and
turned it over to the Narcotics Division later that night.  Craig also testified that, on the day he
testified at trial, he picked up this piece of evidence from Narcotics Division
and brought it with him to court, where it was admitted as State’s Exhbit 3.  He expressly testified that State’s Exhibit 3
was the rock Spitzer had given him.  For
her part, Barker testified that she tested State’s Exhibit 3 and that it was
0.4 grams of cocaine.

          Concerning State’s
Exhibit 6, the State presented evidence that Aldrete and Hernandez found these
rocks of crack cocaine in Cannady’s sock when they stopped and arrested him within
a few minutes after his transaction with Spitzer.  The State presented evidence that Hernandez
placed these on the trunk lid of Cannady’s car and that Briggs “immediately”
took possession of the rocks and placed them in a bag, which Hernandez
initialed.  Briggs gave the bag to
Gracia, who gave it to Craig, who, in turn, bagged the evidence and marked it
as “Item No. 2” before logging the evidence into the Narcotics Division later
that night.  Craig testified that State’s
Exhibit 6 was the contents of that bag and that he had personally picked
State’s Exhibit 6 up from the Narcotics Division and brought it to court on the
day of trial.  Barker, the chemist, testified
that she tested State’s Exhibit 6 and that it was 0.8 grams of cocaine.  On cross-examination regarding the chain of
custody for State’s Exhibit 6, Officer Briggs said that it is not unusual for
evidence to pass through the hands of various officers while the search of a
suspect was being conducted.

          Cannady’s
specific complaint is that the witnesses did not each give express testimony
about which markings were on the bags at various points in time.  For example, he points out that Craig said he
labeled the bags containing the suspected cocaine “Item No. 1” and “Item No. 2”
but that Barker did not testify that the items she tested were marked in this
way.  He also points out that Hernandez
testified that he initialed the bag containing State’s Exhibit 6, but that the
other witnesses did not confirm that they had seen Hernandez’s initials on that
bag.  Although the State did not elicit
testimony from every witness about the presence or absence of markings on the
bags, the State presented sufficient chain-of-custody evidence: Craig’s
testimony that he tagged the evidence as Items 1 and 2 and logged in and picked
up the evidence from the Narcotics Division; Barker’s testimony that she added
incident numbers, tested the evidence, and resealed the bags; and the bags
themselves that the State offered into evidence as Exhibits 3 and 6, which the
jury could examine to determine whether the markings matched the witnesses’
testimony.  We conclude that a rational
jury could find that the items tested by Barker and admitted as State’s
Exhibits 3 and 6 were the items recovered during the undercover buy and
Cannady’s arrest.  See Stoker, 788 S.W.2d at 10 (chain of
custody conclusively established if an officer testifies that he seized an item
of physical evidence, put an identification mark on it, placed it in the
property room, and retrieved the item being offered into evidence at trial); Coleman v. State, 113 S.W.3d 496, 503 (Tex. App.—Houston
[1st Dist.] 2003), aff’d, 145 S.W.3d 649 (Tex. Crim. App. 2004) (chain-of-custody
evidence sufficient to support conviction for possession with intent to deliver
PCP where officer testified he seized bottles, tagged them, and put them in
narcotics lock box, picked the bottles up to bring to trial and that he
recognized the bottles that the State offered as evidence at trial and chemist
testified he tested the bottles and they contained PCP); see also Gullatt v. State, No. 10-09-00244-CR, 2011 WL 3759221, at *3 (Tex. App.—Waco
Aug. 24, 2011, no pet.) (holding chain-of-custody evidence sufficient to show
possession with intent to deliver where officer who seized methamphetamine
transported it to lock box, sergeant took it from lock box to laboratory;
evidence sufficient although “testimony regarding the various envelopes
in which the drugs were contained is at times confusing”); Ramos v. State, No. 03-97-00485-CR, 1998 WL 830512,
at *4 (Tex. App.—Austin Dec. 3, 1998, pet. ref’d) (holding evidence sufficient
to show possession of controlled substance where officer testified that after
he seized methamphetamine from defendant, he locked it in his trunk and later
turned it over to another officer; second officer locked drugs in evidence
room; a detective took drugs from evidence room to laboratory).

          We overrule
Cannady’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel consists of Chief
Justice Radack and Justices Bland and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).

 

 

 











[1]           The possession charge is appellate
cause number 01-10-01047-CR and trial court cause number 1270557.  The delivery charge is appellate cause number
01-10-01048-CR and trial court cause number 1270556.